## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket Nos. 49094 & 49523

| | |
|---|---|
| BRONCO ELITE ARTS & ATHLETICS, LLC, and BRANDON J. PAINE, ) ) ) | |
| Plaintiffs-Counterdefendants-Respondents-Cross Appellants, ) ) | Boise, February 2023 Term |
| v. ) ) | Opinion Filed: August 18, 2023 |
| 106 GARDEN CITY, LLC, and TRICON PROPERTIES, LLC, ) ) ) | Melanie Gagnepain, Clerk |
| Defendants-Counterclaimants-Appellants-Cross Respondents. ) ) ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Lynn G. Norton, District Judge.

The order of the district court is affirmed in part and reversed in part. The case is remanded for further proceedings.

Meuleman Law Group PLLC, Boise, for Appellants, 106 Garden City, LLC, and Tricon Properties, LLC. Joe Meuleman argued.

Holland & Hart, LLP, Boise, for Respondents, Bronco Elite Arts & Athletics, LLC, and Brandon J. Paine. Robert Faucher argued.

_____

STEGNER, Justice.

This consolidated appeal concerns a dispute regarding a purchase option within a lease agreement. Bronco Elite Arts & Athletics, LLC, and its manager and registered agent, Brandon Paine (collectively "Bronco Elite"), operate a gymnastics facility in Garden City, Idaho. The gymnastics facility is located on property, (the "Property"), that Bronco Elite leases from 106 Garden City, LLC ("106 Garden City"), and Tricon Properties, LLC ("Tricon"). The lease agreement provided Bronco Elite the option to purchase the Property five years into the initial ten-year lease term. However, when Bronco Elite attempted to exercise its option, 106 Garden City and Tricon refused to honor the option.

Bronco Elite sued 106 Garden City and Tricon, seeking specific performance. 106 Garden City and Tricon argued that Bronco Elite was precluded from exercising its purchase option

1

because Bronco Elite had breached the lease agreement by consistently failing to pay rent on time and the lease terms only permitted Bronco Elite to exercise the purchase option if it was not in breach. The district court granted summary judgment in favor of Bronco Elite and ordered 106 Garden City and Tricon to convey the Property to Bronco Elite. The specific performance ordered by the district court was stayed pending appeal. This appeal followed. For the reasons discussed below, we affirm in part and reverse in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 18, 2014, Bronco Elite entered into an agreement to lease the Property from Tricon. The lease term commenced on January 1, 2015, and was set to expire on January 31, 2025. Under the terms of the lease, Bronco Elite was to pay no rent for January 2015, $4,675.00 in rent for February 2015, and $9,350.00 in rent per month from March through December 2015. For years two through five, the rent was to increase annually by 5%; for years six through ten, the rent was to increase annually by 2.5%. After the initial ten-year lease expired, there was an option to renew the lease for two additional five-year terms.

The lease agreement also provided Bronco Elite an option to purchase the Property as follows:

> Tenant [Bronco Elite] shall have the exclusive option to purchase the [Property] commencing June 30, 2020 and expiring September 30, 2020, provided that Tenant timely exercises the option to purchase and is not in default or breach of any terms or conditions of this Lease. Tenant must furnish to Landlord [Tricon] written notice of Tenant's intent to purchase and shall specify a closing date not less than 60 and no more than 180 days from the date of notice. The purchase price shall be $1,020,000.00. As consideration for the option to purchase, Tenant shall pay the nonrefundable sum of $85,000.00 to Landlord as option consideration. Said sum shall apply toward the purchase price provided that Tenant timely exercises the option to purchase and is not in default or breach of any terms or conditions of this Lease.

Bronco Elite paid the $85,000 option sum by check in two installments. The first check was for $25,000 and was cashed on December 19, 2014; the second check was for $60,000 and was cashed on December 22, 2014.

Tricon conveyed the Property to 106 Garden City in January 2019. On May 5, 2020, Bronco Elite sent Tricon and 106 Garden City (collectively "Owners")[1] a letter stating that it

---

[1] It is unclear from the record the precise nature of the relationship between Tricon and 106 Garden City. The two entities share a member, Brandon Roberts, with whom Brandon Paine communicated regarding the lease; however,

2

intended to exercise its option to purchase the Property. Bronco Elite further specified that "[t]he closing date shall be July 7, 2020." Owners refused to honor Bronco Elite's effort to exercise its option.

On June 15, 2020, Bronco Elite sued Owners in district court in Ada County "for anticipatory breach of contract and specific performance." Bronco Elite asserted that, although it had notified Owners that it planned to purchase the Property pursuant to the purchase option in the lease, they had refused to sell the Property. Bronco Elite sought specific performance, alleging it was "ready, willing, and able to purchase the Property pursuant to the Purchase Option." (Capitalization in original.) In the alternative, Bronco Elite sought monetary damages for Owners' purported anticipatory breach of the lease agreement. Bronco Elite also sought attorney fees and costs.

Owners answered Bronco Elite's complaint and counter-claimed, asserting that Bronco Elite had breached the lease agreement and, therefore, could not exercise the purchase option. Owners sought monetary damages as well as attorney fees and costs.

Both parties moved for summary judgment. The district court determined that Bronco Elite was not precluded from exercising the purchase option and that Owners had breached the lease agreement by failing to honor Bronco Elite's option to purchase the Property. Accordingly, the district court granted summary judgment in favor of Bronco Elite. The district court ordered specific performance of the purchase option, requiring Owners to convey title of the Property to Bronco Elite.

Both parties appealed, and the appeals were consolidated by the order of this Court.

## II. STANDARDS OF REVIEW

This Court exercises *de novo* review of a grant of summary judgment and the "standard of review is the same as the standard used by the trial court in ruling on a motion for summary judgment." *Stonebrook Const., LLC v. Chase Home Fin., LLC*, 152 Idaho 927, 929, 277 P.3d 374, 376 (2012) (quoting *Curlee v. Kootenai Cnty. Fire & Rescue*, 148 Idaho 391, 394, 224 P.3d 458, 461 (2008)). Summary judgment is proper if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P.56(c). When applying this standard, this Court construes disputed facts "in favor of the non-moving party, and all reasonable inferences that can be drawn from

little other information is available in the record on appeal regarding the relationship. Therefore, this opinion will follow the district court's naming convention and refer to them collectively as "Owners." If there is a distinction to be drawn, we will refer to Tricon or 106 Garden City separately.

3

the record are drawn in favor of the non-moving party." *Curlee*, 148 Idaho at 394, 224 P.3d at 461. Where "the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review." *Lockheed Martin Corp. v. Idaho State Tax Comm'n*, 142 Idaho 790, 793, 134 P.3d 641, 644 (2006) (citing *Infanger v. City of Salmon*, 137 Idaho 45, 44 P.3d 1100 (2002)). However, to survive summary judgment, "an adverse party may not rest upon the mere allegations or denials of that party's pleadings, but the party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." I.R.C.P. 56(c). Therefore, "the nonmoving party must submit more than just conclusory assertions that an issue of material fact exists . . . ." *Jenkins v. Boise Cascade Corp.*, 141 Idaho 233, 238, 108 P.3d 380, 385 (2005) (citing *Northwest Bec–Corp. v. Home Living Serv.*, 136 Idaho 835, 839, 41 P.3d 263, 267 (2002)). "A mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment." *Id.*

*AED, Inc. v. KDC Invs., LLC*, 155 Idaho 159, 163, 307 P.3d 176, 180 (2013).

This Court reviews a district court's evidentiary rulings at the summary judgment stage under an abuse of discretion standard. *Mortensen v. Baker*, 170 Idaho 744, 751, 516 P.3d 1015, 1022 (2022).

When reviewing a lower court's decision for an abuse of discretion, this Court must analyze "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

*Id.*

This Court further elaborated as follows:

[W]hen reviewing a trial court's decision to grant or deny a motion for reconsideration, this Court utilizes the same standard of review used by the lower court in deciding the motion for reconsideration. If the decision was within the trial court's discretion, we apply an abuse of discretion standard. On the other hand, when reviewing the grant or denial of a motion for reconsideration following the grant of summary judgment, this Court must determine whether the evidence presented a genuine issue of material fact to defeat summary judgment.

*Fragnella v. Petrovich*, 153 Idaho 266, 276, 281 P.3d 103, 113 (2012). Stated differently, if the underlying decision for which reconsideration is sought required the exercise of discretion, we will review the grant or denial of the motion for an abuse of discretion. If the decision turned on a question of law, we will exercise free review.

*AED, Inc.*, 155 Idaho at 163, 307 P.3d at 180.

4

This Court reviews a district court's decision to require conditions for a stay pending appeal for an abuse of discretion. *Tricore Invs., LLC v. Estate of Warren through Warren*, 168 Idaho 596, 610, 485 P.3d 92, 106 (2021).

"This Court [also] reviews a district court's award of attorney fees for an abuse of discretion." *Id.* (quoting *Alsco, Inc. v. Fatty's Bar, LLC*, 166 Idaho 516, 533, 461 P.3d 798, 815 (2020)) (alteration in original).

## III. ANALYSIS

### A. The district court did not err in granting summary judgment to Bronco Elite.

On appeal, Owners contend the district court erred in granting summary judgment to Bronco Elite for several reasons. First, they contend the district court erred in relying on "untimely and inadmissible declaration statements of [Brandon] Paine[,]" the manager of Bronco Elite. They further maintain that Bronco Elite never raised a waiver argument in support of its motion for summary judgment and the district court incorrectly "ordered specific performance of the Property on grounds raised *sua sponte*." Next, they argue that "the district court erred because the record lacked evidence that establish[ed] the elements required for waiver under Idaho law, particularly in light of the express anti-waiver provision in the Lease." Each of the arguments will be addressed in turn.

#### 1. Admissibility of Paine's Statements

We must first address Owners' argument that Paine's statements were not admissible. "Summary judgment proceedings are decided on the basis of admissible evidence." *Mortensen*, 170 Idaho at 753, 516 P.3d at 1024 (quoting *Campbell v. Kvamme*, 155 Idaho 692, 696, 316 P.3d 104, 108 (2013)). Accordingly,

> [t]he admissibility of evidence contained in affidavits and depositions in support of or in opposition to a motion for summary judgment is a threshold matter to be addressed before applying the liberal construction and reasonable inferences rule to determine whether the evidence creates a genuine issue of material fact for trial.

*Id.* (quoting *Fragnella*, 153 Idaho at 271, 281 P.3d at 108) (alteration in original). "Declarations submitted on summary judgment 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated.'" *Id.* (quoting I.R.C.P. 56(c)(4)). "Also, sworn or certified copies of all papers or parts of papers referred to in the affidavit must be attached to or served with the affidavit." *Id.*

5

In support of its motion for summary judgment, Bronco Elite submitted a declaration by Paine, in which he declared in part:

> 16. Property Owners provided me and Bronco Elite only a single notice of delinquent payment of rent. A true and correct copy of that notice is attached hereto as **Exhibit D.** Bronco Elite and I paid the full balance due that very day, August[] 19, 2019.
>
> 17. Property Owners have never declared me or Bronco Elite to be in default or breach of any term or condition of the Lease.
>
> 18. Property Owners have never charged me or Bronco Elite a late fee under the Lease.
>
> 19. Bronco Elite and I are fully current on our rent and have been fully current since well before the date we notified Property Owners of our intent to exercise the Purchase Option.
>
> 20. In fact, Bronco Elite and I have paid Property Owners every penny of rent and other charges due under the Lease, amounting to over $900,000. This is in addition to the $85,000 Bronco Elite and I paid Property Owners for the Purchase Option.
>
> 21. I also have invested nearly $200,000 into the Property to convert it from an industrial warehouse to a useable, code-compliant facility. Nearly all of my life savings, and much of my parents' savings, has gone into the Property in anticipation of my being able to purchase it this year. I would not have made those investments but for the Purchase Option.

(Bolded lettering and capitalization in original.) Over Owners' objections, the district court concluded that all six paragraphs were admissible. The district court found that "[p]aragraph 16 is admissible personal knowledge[.]" The district court concluded paragraph 17 was also "admissible personal knowledge" but explained that it read "the word 'declared' as 'provided notice of,' not as a conclusion of the Owners' position on the alleged breach or default of the Lease." The district court determined that paragraph 18 was also admissible and further concluded that "[p]aragraphs 19–21 [were] admissible as personal knowledge of actions taken and considered." (While the district court did not explain why it found paragraph 18 to be admissible, it also reflects Paine's personal knowledge.)

Bronco Elite also submitted a second declaration from Paine when opposing Owners' motion for summary judgment. In relevant part, Paine declared:

> 21. Bronco Elite and I would have moved out of the Property long ago rather than continuing to invest in the Property in anticipation of being able to purchase it in summer 2020 had Property Owners informed us that they considered us to be in default or breach of the Lease.

6

Again, over Owners' objection, the district court determined that paragraph 21 in Paine's second declaration was admissible. The district court explained that it "[did] not find the statement that Tenants would have vacated had they known Owners believed they breached and would not exercised [sic] the Purchase Option is speculative." Instead, the district court reasoned, "it is Paine discussing what actions he would have taken. This is also an issue of weight, not of admissibility." The district court determined it would consider the paragraph.

On appeal, Owners argue that the district court abused its discretion in admitting paragraphs 16–21 of Paine's first declaration and in admitting paragraph 21 of Paine's second declaration. Owners assert that the challenged paragraphs are comprised of inadmissible, conclusory statements. They further contend that paragraphs 19, 20, and 21 of Paine's first declaration, as well as paragraph 21 of Paine's second declaration, should have been supported with documentation as required by Idaho Rule of Civil Procedure 56(c)(4). Owners also assert that Paine's second declaration was untimely because it was submitted only fourteen days prior to the hearing on the summary judgment motions.

We hold that the district court did not abuse its discretion in determining the challenged portions of Paine's declarations were admissible. As an initial matter, we decline to address Owners' argument that Paine's second declaration was untimely because it was not preserved below. *See Obenchain v. McAlvain Const., Inc.*, 143 Idaho 56, 57, 137 P.3d 443, 444 (2006) ("[A]ppellate courts will not consider new arguments raised for the first time on appeal."). We also note that there were options available to Owners that were not pursued below. For instance, they could have moved for a continuance of the summary judgment hearing. They did not. They could have sought leave to depose Paine in an effort to undermine his declarations. They did not. They complain that filing the declaration two weeks before the argument was too late for the second declaration to be filed. However, because they did not pursue viable options below that could have addressed their untimeliness claim, we are unpersuaded we should address them now.

Next, we conclude that Owners have not shown that the challenged statements in Paine's first declaration are conclusory. "A statement is conclusory if it does not contain supporting evidence for its assertion." *Eldridge v. West*, 166 Idaho 303, 311, 458 P.3d 172, 180 (2020). Owners essentially argue that Paine's assertions are conclusory because (1) there was evidence in the record that tended to disprove those assertions or (2) Bronco Elite did not support the assertions with additional documentation. However, whether a statement is conclusory does not depend on

7

whether it contradicts other evidence in the record; rather, it depends on the content and basis of the statement itself. *See Berian v. Berberian*, 168 Idaho 394, 410, 483 P.3d 937, 953 (2020) (explaining that a conclusory statement was not enough to show a genuine issue of material fact for purposes of avoiding summary judgment but not deeming a statement conclusory simply for disputing facts offered by the opposing party).

Additionally, Owners have not pointed to any evidence in the record that contradicts Paine's statements. Instead, their citations to the record corroborate Paine's statements. For example, Owners contend that the record contains "numerous undisputed emails and text communications to Paine regarding late rent and the lien and pointed out that these communications clearly declared a breach of the Lease[.]" (Internal citations omitted, capitalization in original.) In actuality, the emails sent to Paine include months of account statements that show Owners never charged Bronco Elite a late fee for failing to pay rent on time. Contrary to Owners' contention, the statements reflect that Bronco Elite paid Owners everything they were due as listed in the emails. Thus, the evidence in the record does not contradict Paine's statements—rather, it supports them.

Furthermore, Paine did not refer to any specific documents in paragraphs 19, 20, or 21 of his first declaration. Rule 56(c)(4) requires that "[s]worn or certified copies of all papers or parts of papers *referred to in an affidavit* must be attached to or served with the affidavit." I.R.C.P. 56(c)(4) (italics added). While the addition of financial statements could have bolstered Paine's assertions, the Rule did not require that he attach any. Owners' arguments that Bronco Elite did not support its assertions with additional documentation go to a determination of weight, rather than admissibility.

Ultimately, we hold that Owners have failed to show that the district court abused its discretion in deeming the challenged portions of Paine's declarations admissible.

*2. Waiver*

We next address Owners' arguments regarding the issue of waiver. The lease agreement provided in relevant part that "Tenant [Bronco Elite] shall have the exclusive option to purchase the [Property] commencing June 30, 2020 and expiring September 30, 2020, provided that Tenant timely exercises the option to purchase and *is not in default or breach of any terms or conditions of this Lease*." (Italics added.) The lease agreement also contained a "non-waiver" provision, which provided in full:

8

> Waiver by the Landlord of any breach of any term, covenant, or condition herein contained shall not be deemed to be a waiver of such term, covenant or condition; or of any subsequent breach of the same or any other term, covenant or condition herein contained. The subsequent acceptance of rent hereunder by Landlord shall not be deemed to be a waiver of any preceding breach by Tenant of any term, covenant or condition of this Lease, other than the failure of Tenant to pay the particular rent so accepted, regardless of Landlord's knowledge of such preceding breach at the time of acceptance of such rent.

(Capitalization in original.)

The district court concluded that, based on the lease agreement, "it is clear that if Tenants were in breach or default of the Lease, then Owners did not breach by failing to convey the Property to the Tenants." "However," the district court continued, "if the Tenants were not in breach or default of the Lease, then the Owners did breach the Lease by failing to convey the Property under the Purchase Option." (Footnote omitted.) The district court explained that "on both [parties'] motions for summary judgment, the central issue is whether Tenants[] were in breach or default of the Lease before exercising the Purchase Option on May 5, 2020[,] or before the projected closing date in the notice." The district court further explained that a breach was distinct from a default: "[U]nder the unambiguous, plain-language terms of this Lease, failure to comply with the terms, covenants, and conditions of the Lease is a breach while the failure to cure any such breach within ten days of notice is a default[.]"

The district court first analyzed whether Bronco Elite was in breach of the lease agreement for failing to pay late fees on rent.[2] The district court concluded that "Tenants were in breach of the Lease at the time notice was given of the intent to exercise the Purchase Option because Tenants failed to pay the accrued late fees on unpaid rents[.]" The district court explained that "[t]he plain-language of the Lease makes the late fee charge automatic . . . if rent is not paid by the seventh day after it is due." However, despite Bronco Elite's failure to pay the automatic late fees and despite the non-waiver provision, the district court concluded that Owners had "waived a claim for breach for the recovery of the now-claimed late fees[:]"

> [T]he [c]ourt finds the only reasonable inference from all of the evidence presented at summary judgment is that the Owners never sought to enforce [the late fee section] of the Lease, and the Owners never assessed late fees against Tenants before the Tenants sought to exercise the Purchase Option on May 5, 2020. Additionally, the [c]ourt finds Owners' actions of not charging and later failing to

---

[2] The district court also analyzed whether Bronco Elite was in default of the lease. However, neither party challenges that analysis on appeal. Instead, the parties focus solely on the doctrine of waiver as it relates to breaches of the lease agreement.

9

reference late fees was a continuing course of conduct that misled the Tenants to believe no late fees would be charged or accrue for untimely payments.

The district court next analyzed whether Bronco Elite was in breach of the lease agreement for failing to remove the lien of Western Heating and Air Conditioning, ("Western"). Bronco Elite previously contracted with Western to modify the Property into a code-compliant gymnastics center, and Western obtained a lien against the Property to ensure Bronco Elite's payment of money owed to Western. The district court concluded that, "under the plain language of the Lease, Western's lien remaining on the Property when Tenants' [sic] sought to exercise the Purchase Option and until the expiration of the Purchase Option (September 30, 2020) was a breach of the lease." However, notwithstanding the non-waiver provision, the district court further concluded that Owners "waived the right to claim a breach for failure to remove the lien." The district court reasoned that Owners had "communicated to Paine that his payment plan with Western was acceptable to address the lien" and that they "did not communicate to Tenants [Bronco Elite] at any time during the four years between the March 11, 2016[,] emails and when the Tenants[] sought to exercise the Purchase Option that Tenants were in default or breach; this includes two years while Tenants paid the lien amount."

On appeal, Owners first argue that the district court improperly ruled on the waiver issue because Bronco Elite "neither argued nor submitted any declaration testimony addressing the legal doctrine of waiver in support of its First [summary judgment] Motion." (Capitalization in original.) According to Owners, this means the district court improperly raised and decided the waiver issue *sua sponte*. Next, Owners contend that, even if the district court could consider the waiver issue, it nonetheless erred in finding Bronco Elite's breaches of the lease agreement had been waived.

In response, Bronco Elite concedes that it first raised the issue of waiver in its reply brief regarding its motion for summary judgment rather than its opening brief. However, it maintains that this was the first opportunity it "reasonably could have raised the issue . . . given that Owners had never before contended [Bronco Elite was] in breach or default of the Lease due to the lien or any late fees." Bronco Elite further maintains that the district court correctly decided the waiver issue.

As an initial matter, we first conclude that the district court did not raise the waiver issue *sua sponte*. In Owners' answer and counterclaim, they stated that Bronco Elite "breached the Lease by failing to timely make payments under the Lease." At no point did Owners assert with specificity that Bronco Elite had failed to pay late fees or remove the lien. In Bronco Elite's answer

10

to Owners' counterclaim, it asserted that "Owners' claim [was] barred by the doctrines of waiver and estoppel." Then, in its opening memorandum in support of its summary judgment motion, Bronco Elite acknowledged it had "occasionally made late rent payments" but maintained that it "[had] never been in default or breach of the Lease[.]" Owners responded to Bronco Elite's motion and also brought their own motion for summary judgment, arguing that Bronco Elite had breached the lease agreement by specifically "fail[ing] to make timely payments and keep the Property free of liens." The first argument regarding waiver was brought by Bronco Elite in response to Owners' memorandum regarding summary judgment. Bronco Elite continued to argue that it was "never in default or breach of the Lease" but also asserted that, even if it had breached the agreement, Owners had "long ago waived their right to declare such a default or breach based on these facts." Notably, Owners had the opportunity to respond to the waiver argument at length in their reply memorandum. *See Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005) (explaining that the reasoning behind requiring a party to raise issues in its initial brief is to allow the other party the "opportunity to respond"). However, nowhere in Owners' reply memorandum did they argue that the district court could not consider the waiver issue due to Bronco Elite's failure to make a waiver argument in its opening memorandum. Thus, the district court did not raise the issue *sua sponte*, and it properly considered the waiver issue.

We next conclude that the district court did not err in determining Owners had waived Bronco Elite's breaches of the lease agreement. The doctrine of waiver is an equitable one, "based upon fairness and justice." *Eagle Springs Homeowners Ass'n, Inc. v. Rodina*, 165 Idaho 862, 870, 454 P.3d 504, 512 (2019) (quoting *Hecla Mining Co. v. Star-Morning Mining Co.*, 122 Idaho 778, 782, 839 P.2d 1192, 1196 (1992)). Waiver "is 'a voluntary, intentional relinquishment of a known right or advantage[.]'" *Id.* at 871, 454 P.3d at 513 (quoting *Pocatello Hosp. v. Quail Ridge Med. Inv'r*, 156 Idaho 709, 719, 330 P.3d 1067, 1077 (2014)). "The 'party asserting waiver must have acted in reliance upon the waiver and altered the party's position.'"[3] *Id.* (quoting *Hecla Mining Co.*, 122 Idaho at 782, 839 P.2d at 1196). In general, "[w]aiver will not be inferred from the parties' conduct absent a clear and unequivocal act manifesting an intent to waive, or from conduct

---

[3] We recognize that other jurisdictions do not require a showing of detrimental reliance to find a waiver. *See, e.g.*, *Morgan v. Sundance, Inc.* 142 S.Ct. 1708, 1713 (2022); *see also In re Estate of Warrington,* 686 N.W.2d 198, 202 (Iowa 2004); *see also* 28 AM. JUR. 2d *Estoppel and Waiver* § 187 (citing only *Stoddard v. Hagadone Corp.*, 147 Idaho 186, 191, 207 P.3d 162, 167 (2009), for the proposition that "some states require that a party asserting waiver must have acted in reliance upon the waiver and altered their position"). However, because the parties have not argued we should adopt a different formulation of the waiver doctrine, we will not address the matter at this time.

11

amounting to estoppel." *Id.* (quoting *Pocatello Hosp.*, 156 Idaho at 719, 330 P.3d at 1077) (alteration in original; internal quotations omitted).

"The existence of waiver ordinarily is a question of fact and is foremost a question of intent." *Id.* "In order to establish waiver the intention to waive must clearly appear, although it may be established by conduct." *Id.* "[I]f there is any substantial evidence in the record to support a waiver[,] it is for the trier of fact to determine whether the evidence establishes such a waiver." *Id.* (quoting *Fletcher v. Lone Mountain Rd. Ass'n*, 162 Idaho 347, 354, 396 P.3d 1229, 1236 (2017)) (alteration in original). However, "[w]hen . . . there is no dispute as to the material facts and only one reasonable inference can be drawn from them, the question of whether a waiver has occurred becomes one of law." *Id.* (quoting 13 WILLISTON ON CONTRACTS § 39:21 (4th ed.)) (alteration in original).

Additionally, "a party to a written contract can waive a provision of that contract by conduct despite the existence of a so-called antiwaiver or failure to enforce clause in the contract." *Id.* at 872, 454 P.3d at 514 (quoting 13 WILLISTON ON CONTRACTS § 39:36 (4th ed.)).

> This rule "is based on the view that the nonwaiver provision itself, like any other term in the contract, is subject to waiver by agreement or conduct during performance." [13 WILLISTON ON CONTRACTS § 39:36 (4th ed.).] Indeed, anti-waiver provisions are placed in contracts "to give a contracting party some assurance that its failure to require strict adherence to a contract's term will not result in a complete and unintended loss of its contract rights if it later decides that strict performance is desirable." *Id.* A contractual provision which states that "a term or condition of any sort cannot be eliminated by a waiver . . . is ineffective," so "a party has the same power to waive the condition . . . as though the provision did not exist." *Id.* But, "[i]n order to establish that an antiwaiver clause is not enforceable, the party asserting a waiver must show a clear intent to waive both the clause and the underlying contract provision." *Id.*

*Id.* (alterations in original).

Here, other than the admissibility issues already discussed, Owners do not dispute the facts that were in front of the district court. Rather, they dispute whether those facts give rise to Bronco Elite's waiver defense. When addressing a waiver defense that will ultimately be tried before the district court as the finder of fact, "[t]he district judge is allowed on summary judgment to arrive at the most probable inferences based upon the undisputed evidence properly before him." *Fullerton v. Griswold*, 142 Idaho 820, 825, 136 P.3d 291, 296 (2006). "This Court reviews the inferences drawn by the district judge to determine whether the record reasonably supports those inferences." *Id.*

12

The record here supports the reasonable inferences drawn by the district court. We begin by recognizing the facts in Paine's declarations have not been contested. The *admissibility* of Paine's declarations has been challenged (and rejected), but the declarations have not been contradicted. With respect to the late fees, the district court explained that Owners were fully aware that they could charge fees on the late rent payments and that they had informed Bronco Elite of the *possibility* of late fees. However, the district court further explained that, although Owners had communicated with Bronco Elite regarding specific late payments, Owners had never attempted to enforce the payment of the late fees:

> Despite the Owners sending lease statements that showed no balance due and owing except the monthly charges continuing to accrue, the Owners at no point indicated to Tenants that the Tenants owed additional late fees until the Tenants sought to exercise the Purchase Option. . . . [The] Owners' actions of not charging and later failing to reference late fees was a continuing course of conduct that misled the Tenants to believe no late fees would be charged or accrue for untimely payments.

Owners argue on appeal that, pursuant to the non-waiver provision, Bronco Elite "owed rent for late fees even if Owners accept[ed] the underlying rent payments[;]" however, as Owners conceded at oral argument before this Court, they never attempted to recoup any late fees until Bronco Elite attempted to exercise its purchase option.

With respect to the lien, the district court pointed to multiple communications between Tricon and Bronco Elite discussing the lien. The district court explained that, not only was Tricon apprised of the lien, but it had also facilitated the agreement between Bronco Elite and Western to pay the lien balance. In fact, the debt underlying the lien had been paid by Bronco Elite years before it sought to exercise its purchase option. Consequently, Western's valueless lien was a lien in name only and Western appropriately released the lien as soon as it was brought to its attention.

The uncontradicted evidence in the record also supports the district court's determination that Bronco Elite detrimentally relied on Owners' waiver. Paine declared that he had spent a significant sum of money (nearly $200,000) turning the Property from "an industrial warehouse to a useable, code-compliant facility[,]" which he would not have done if he had been unable to exercise the purchase option. Nothing in the record contradicts Paine's statements. Owners put forth no contradictory evidence, nor did they seek a continuance in order to develop evidence to rebut Paine's statements. In their briefing before this Court, they point to no evidence in the record that would establish a genuine issue of a material fact. Accordingly, we hold that the record

13

reasonably supports the inferences drawn by the district court that Owners waived their rights to enforce the lease agreement against Bronco Elite regarding late fees and the lien.

### 3. Lien as a "Material" Breach

The district court also concluded that, while Bronco Elite had breached the lease agreement by failing to keep the Property free from liens, that breach was not a material breach. Accordingly, the district court determined that the breach could not operate to bar Bronco Elite from exercising the purchase option. The district court explained:

> The breach was material until the balance due on the lien was paid in full until [sic] spring of 2018. After the lien was paid, however, Western had an obligation to release its lien. While Paine should have followed up earlier to be sure that the lien release was filed, the lien with a lien value of $0 remaining on the [P]roperty between spring of 2018 and May 5, 2020, and even through the Purchase Option period, was not a material breach since it should have been immediately released by Western, and was immediately released when requested in January 2021.

On appeal, Owners do not contest the district court's conclusion that Bronco Elite's failure to get Western's lien removed was not a material breach; instead, they argue that the materiality of the breach is irrelevant. Owners contend that Bronco Elite's requirement not to breach the lease agreement was a condition precedent to its ability to exercise the purchase option. In response, Bronco Elite argues that Owners were required to show that the lien constituted a material breach.

We hold that the district court did not err in determining Bronco Elite's failure to get a lien (that was a lien in name only) removed did not preclude it from exercising the purchase option. At no point in the lease agreement did the parties define what constituted a "breach" of the lease agreement. Accordingly, the district court correctly applied the plain legal meaning of the term "breach" to interpret the lease agreement. *See Riley v. Spiral Butte Dev., LLC*, 155 Idaho 469, 473, 314 P.3d 151, 155 (2013) (using the plain legal meaning of the phrase "full force and effect" to interpret the meaning of a contractual purchase option). As a result, any breach would need to be "material" in order for Owners to prevent Bronco Elite from exercising the purchase option. Owners have not pointed to any evidence to support their contention that the plain legal meaning of "breach" includes the level of technicality that would result in Bronco Elite being unable to exercise the purchase option due to a valueless lien being placed on the Property, nor do they contend that the existence of the lien was a material breach. As such, the district court correctly concluded the valueless lien did not constitute a material breach of the lease.

**B. The district court did not err in denying Owners' motion to reconsider.**

After the district court granted summary judgment in favor of Bronco Elite, Owners filed a motion to reconsider, requesting that the district court revisit its decision regarding the breach issue. They argued that, during the proceedings regarding Bronco Elite's request for equitable accounting (discussed below), new evidence had been submitted to the district court which showed Bronco Elite had breached the lease agreement by failing to timely reimburse Owners for property tax payments as required by the lease and, therefore, Bronco Elite could not validly exercise the purchase option. The district court denied reconsideration of its order regarding the first summary judgment motions, explaining:

> This [c]ourt finds the Owners possessed and had access to their own accounting records and files before [the] deadline to file or respond to the first motion for summary judgment. The Owners had the ability to present evidence and argue any failure to pay rents or taxes during those summary judgment proceedings. Further, the Owners' motion for reconsideration was not filed until three months after the [c]ourt's summary judgment decision was entered that concluded that the Tenants had made the required payments under the Lease through the Purchase Option. This "new" evidence was available to the Owners but was not timely raised in opposition to summary judgment. Quite frankly, the issue of taxes, the proper amount due and when[,] since real property taxes are paid in arrears, and the evidence before the [c]ourt required careful review and analysis by the [c]ourt. What is termed as "new["] evidence in the argument to support reconsideration was not actually "new" but an issue of timing of payments and the Owners declining to deposit such payments. To permit this "new" evidence at this point in the proceedings would allow the Owners to bypass the timing rules in Rule 56 and would endorse the Owners' failure to conduct due diligence prior [to] the [c]ourt's ruling almost six months ago related to whether there was a breach of the lease—issues squarely raised in the first summary judgment proceedings.

On appeal, Owners argue that it was mandatory for the district court to consider the new evidence with respect to its decision on the first summary judgment motion because the district court had considered the new evidence when deciding the second summary judgment motion. They assert that "[a]llowing the district court to decline to consider the evidence on reconsideration would result in inconsistency between the findings in the First S[ummary] J[udgment] Order and Second S[ummary] J[udgment] Order, and would conflict with the purpose of I.R.C.P. 11.2(b)(1)." (Capitalization in original.) Bronco Elite responds that "the district court rightly concluded at summary judgment that Tenants had made all required payments under the Lease at the time they notified Owners of their intent to exercise the purchase option." Further, Bronco Elite argues the

15

district court "rightly concluded in denying Owners' motion for reconsideration that Owners presented no new evidence on reconsideration to undermine that conclusion."

We hold that the district court did not err in declining to consider the "new" evidence Owners submitted in support of their motion to reconsider. This Court recently explained that "[t]he trial court should have the discretion to determine whether it will consider additional evidence in support of a motion for reconsideration, if it is submitted late." *Summerfield v. St. Luke's McCall, Ltd.*, 169 Idaho 221, 234, 494 P.3d 769, 782 (2021). However, the Court clarified that a trial court is required "to consider evidence touching on the 'correctness' of its original order." *Id.*

While the evidence Owners relied on in their motion to reconsider sought to challenge the district court's grant of summary judgment, the district court correctly determined that the evidence was not newly discovered and did not affect its original decision. The evidence Owners relied upon in their motion to reconsider was first put before the district court on May 5, 2021, when Owners relied on the evidence to argue against Bronco Elite's requested equitable accounting. Thus, Owners were in possession of the evidence by at least that date (and likely much earlier). Even assuming the evidence was "new" on May 5, 2021, Owners still waited until July 30, 2021—almost three months later—to move the district court to reconsider its original decision regarding breach. The evidence was not "newly discovered" at the time Owners filed their motion to reconsider.

Most importantly, the evidence does not support Owners' claim that Bronco Elite was in breach for its failure to reimburse Owners for their property tax payments. Under the lease, Bronco Elite was obligated to reimburse Owners for the property taxes they paid to Ada County. Because property taxes are paid in arrears, the mechanism by which Bronco Elite satisfied its obligation to Owners was to pay them the estimated taxes, which were invoiced monthly. However, it was Owners' obligation to apprise Bronco Elite if the estimated tax payments did not equal its actual payments and then notify Bronco Elite of the shortfall between the amount Owners paid to Ada County and that Bronco Elite paid to Owners. It was only after the district court granted summary judgment to Bronco Elite and the parties attempted to resolve the case with an equitable accounting involving the purchase price of the Property that Owners asserted that Bronco Elite had failed to pay the entirety of the tax obligation incurred by Owners.

16

It appears that Owners "discovered" this obligation after summary judgment had been granted to Bronco Elite. Bronco Elite's declarations indicated that it had paid all amounts claimed by Owners and that the statements received from Owners indicated nothing more was due. The "newly discovered" evidence claimed by Owners was in their possession the entirety of the time prior to when the summary judgment motions were researched, briefed, argued, and decided. Based on the record before us, it appears that it was only after these events occurred that Owners claimed Bronco Elite was in breach for the after-the-fact realization of an obligation that had apparently never been invoiced.

Importantly, this new evidence would not have changed the district court's decision. Owners' motion to reconsider did not put forth facts that disputed or contradicted the district court's prior conclusion that the record reflected that Bronco Elite had made all the required payments under the lease at the time it notified Owners of its intent to exercise the purchase option. Simply put, Owners never made a demand for payment. Absent a demand for payment, Bronco Elite had no obligation to make an additional payment to Owners. Accordingly, we hold that the district court did not err in denying the motion to reconsider.

## C. The district court erred in setting the purchase price of the Property in the way that it did.

After the district court ordered specific performance in its favor, Bronco Elite requested that the district court undertake an equitable accounting to determine the purchase price of the Property. Bronco Elite sought to offset the $935,000 purchase price by $105,391.63, the total rent it had paid after the specified closing date of July 7, 2020.[4] The district court found "that there is no dispute that Tenants paid rent in the amount of $105,391.63 to Owners after July 7, 2020[,] that would not have been incurred if the Owners would have completed the sale to Tenants on July 7, 2020." Bronco Elite also sought an offset for "additional costs [incurred] in connection with closing that [it] would not have incurred had Owners closed when required, such as increased financing costs due to rising interest rates." The district court determined that, "[s]ince the Tenants have not specifically claimed any increased interest rate or closing costs, and there is no evidence before the [c]ourt that there will be increased costs, the [c]ourt will not account for such costs at this point." Owners also sought a credit in the form of prejudgment interest to compensate them

---

[4] Bronco Elite originally requested an offset of $129,728.08. However, upon learning that Owners had not deposited several payments, it amended its request to the amount Owners had deposited: $105,391.63.

for the loss of use of the purchase price while the litigation was pending. The district court noted that there was no concrete evidence before it regarding an applicable interest rate. The district court then determined that Idaho Code section 28-22-104(1) applied, setting the interest rate at 12%. Using that interest rate, the district court calculated that Owners would be entitled to prejudgment interest credit of $109,740.98 for the loss of use of the purchase price while the litigation was pending.

Notwithstanding these calculations, the district court then declined to grant Owners prejudgment interest credit and further declined to grant Bronco Elite an offset for rent. Though it is unclear from the record, it appears that the district court declined to grant the parties their requested relief because the purchase price would have increased by only $4,349.35, a relatively small amount when compared to $935,000. In other words, it appears that the district court declined to grant the requested relief because doing so would leave the parties in substantially the same position as if no equitable relief were granted.

*1. Standard of Review*

As an initial matter, Owners assert that the entirety of Bronco Elite's cross appeal should be denied because it "failed to cite or apply the correct standard of review"—which, according to Owners, is the abuse of discretion standard. However, Bronco Elite did identify a standard of review in its opening brief: "Because these issues involve questions of law, this Court enjoys free review." Accordingly, the question before this Court is not whether Bronco Elite identified a standard of review; rather, the question we must answer is which standard of review applies.

An equitable accounting is an equitable remedy. "This Court reviews the district court's rulings on equitable remedies for an abuse of discretion." *Climax, LLC v. Snake River Oncology of E. Idaho, PLLC*, 149 Idaho 791, 794, 241 P.3d 964, 967 (2010). Therefore, although Bronco Elite urged us to apply a *de novo* standard of review, we will review the district court's decision regarding the request for equitable accounting under an abuse of discretion standard.

*2. Offsets and Credits against the Purchase Price*

Bronco Elite argues that the district court incorrectly held that it must give Owners a credit in their favor if it granted Bronco Elite's request for an offset against the purchase price. Bronco Elite asserts that Owners failed to provide the district court with any evidence as to an appropriate interest rate to calculate their requested offset. "Accordingly," Bronco Elite argues, "Tenants are entitled to their entire rent credit, and Owners are not entitled to any interest credit on the unpaid

purchase price." Bronco Elite further argues that the district court "compounded its error" when it concluded that Idaho Code section 28-22-104(1) applied.

Owners respond that *Dohrman v. Tomlinson*, 88 Idaho 313, 399 P.2d 255 (1965), requires that, if the purchaser receives an offset, then the seller should receive a credit for the loss of the use of the purchase price as well. They further maintain that the district court correctly "found that Tenants' failure to tender the purchase price prevented any evidence of the actual interest rate that would have applied[,]" rendering the appropriate interest rate the 12% interest rate supplied by section 28-22-104(1).

We hold that the district court erred in awarding Owners a credit for the loss of the use of the purchase price. Even if a breaching party is entitled to an equitable accounting—a point of law we leave for another day—Owners failed to put forth any evidence as to a reasonable interest rate. Instead, they chose to rely solely on the prejudgment interest statute, which imposes a rate significantly above the market rate of return on capital. That statute does not apply here. Applying section 28-22-104(1) here would effectively grant Owners a windfall for their breach of the lease agreement. Owners effectively put all their eggs in the statutory basket. Owners should not be allowed on remand to make new and different arguments when they elected to limit the relief sought to the inapplicable statute.

The purpose of an equitable accounting is to place the parties in the same position they would have been in if the contract had been performed. The purpose is not to allow the breaching party to reap the benefits of and profit from its breach. We conclude, the district court failed to "act[] consistently with the legal standards applicable to the specific choices available to it" when it applied the 12% legal rate of interest to the equitable accounting. *Lunneborg*, 163 Idaho at 863, 421 P.3d at 194.

*3. Increased Financing Costs as an Offset against the Purchase Price*

Bronco Elite next argues the district court erred in declining its request to further offset the purchase price for additional costs it will incur due to the delay in closing. Bronco Elite maintains that, given increasing interest rates, which were evident when Bronco Elite was trying to close on the Property, it will be required to incur additional costs related to purchasing the Property that it would not have incurred had Owners closed on the Property on July 7, 2020. Bronco Elite argues that the district court should have considered the increase in financing costs it will be forced to bear.

19

Owners respond that "[a]llowing Tenants to recover additional financing costs incurred despite their non-performance of tendering payment would amount to an impermissible double recovery under Idaho law." Owners argue that "[a]llowing Tenants to recover damages for financing would be inappropriate since it was specifically addressed and excluded as a condition of the Purchase Option."

We hold that Bronco Elite is entitled to recover costs associated with purchasing the Property that it would not have had to bear if Owners had sold the Property in July 2020. As we explained above, the purpose of an equitable accounting is to place the parties in the same position they would have been in if the contract had been performed. If Bronco Elite can prove to the district court that it incurred additional costs due to the forced delay in purchasing the Property, it is entitled to an offset against the purchase price for those increased costs. We conclude the district court erred in concluding otherwise.

**D. The district court did not err in requiring conditions to stay enforcement of the judgment.**

Because "real property is unique and any transfer of the real property is a result that cannot be undone[,]" the district court stayed the enforcement of the judgment during the pendency of this appeal. Based on Idaho Appellate Rule 13, the district court imposed the following conditions:

> Idaho Appellate Rule 13 requires the posting of such security and upon such conditions as the district court shall determine. The [c]ourt orders that the Tenants must continue to pay any amounts due and owing under the lease to the Owners for the rental of the Property until the appeal is decided. Further, the [c]ourt orders that the Owners must post a bond in the amount of $240,000 plus an additional bond amount to cover Tenants' attorney fees as security for the stay. Therefore, the stay will not be in effect until such bond is posted. If the [d]istrict [c]ourt's decision is affirmed on appeal, Tenants will be entitled to an offset for additional rents paid during the period of this stay against the purchase price. If the [d]istrict [c]ourt's decision is reversed on appeal, then additional rents during the stay will be addressed under the guidance of the Supreme Court's decision.

(Bolded lettering omitted.)

On December 15, 2021, the district court entered a "corrected order staying execution of judgment pending appeal." The district court explained that Owners had deposited their bond and, as such, the execution of the judgment was stayed pending appeal. The district court then ordered, in relevant part, that Bronco Elite "resume the following payments in the lease[] to the Owners as of September 23, 2021, including Annual Base Rent . . . , Periodic Increases in Base Rent . . . , and any Late Payment Charge(s) (if incurred)[.]" (Capitalization in original.)

20

*1. Excusal of Rent Payments*

Owners first contend that the district court erred in "excus[ing] Tenants from past-due rent owed from April 1, 2021[,] until the stay was in effect on September 23, 2021." They argue that this "results in an unjustified and unreasonable windfall" because Bronco Elite "avoid[ed] paying the rent despite possession of the Property from April 2021 through September 2021." In response, Bronco Elite argues that the district court was within its discretion to constrain its order regarding conditions of the stay to only during the stay period. Bronco Elite points out that the district court expressly required that Bronco Elite pay all its rental payments within the stay period.

Idaho Appellate Rule 13(b) provides in relevant part:

> **Stay Upon Appeal—Powers of District Court—Civil Actions.** In civil actions, unless prohibited by order of the Supreme Court, the district court shall have the power and authority to rule upon the following motions and to take the following actions during the pendency on an appeal:
>
> . . . .
>
> (14) Stay execution or enforcement of any judgment, order or decree appealed from, other than a money judgment, upon the posting of such security and upon such conditions as the district court shall determine.

"These actions may be taken to preserve the status quo throughout the appeal." *Tricore Invs., LLC*, 168 Idaho at 628, 485 P.3d at 124. However, "[a]lthough Rule 13(b)(14) grants the district court broad authority to impose certain conditions when a nonmonetary judgment is stayed, the district court's discretion is not unfettered." *Id.*

We conclude that the district court did not err. The purpose of imposing conditions under Rule 13(b)(14) is "to preserve the status quo throughout the appeal." *Id.* The purpose is not to continue adjudicating claims. Additionally, as noted by the district court in a subsequent order, Bronco Elite had previously attempted to make rent payments in April 2021, but Owners rejected those payments. Furthermore, the district court later noted that, "[w]hile Owners' rejection of Tenants' payments was mentioned in briefs or declarations, neither party actually filed any motion or briefing before this [c]ourt asking this [c]ourt to opine whether payments should continue under the terms of the lease and/or the terms of the sale[.]"

Given the level of ambiguity surrounding the rent payments between April and September 2021, we cannot conclude the district court abused its discretion in fashioning the order in the way that it did.

*2. Offset against Purchase Price*

Owners next assert that the district court erred in determining that Bronco Elite would be entitled to receive an offset against the purchase price of the Property for rent paid during the stay if it prevailed on appeal.

We disagree. As discussed above, the purpose of an equitable accounting is to place the parties in the same position they would have been in if the contract had been performed. Accordingly, Bronco Elite is entitled to a reduction of the purchase price for any rent it had to pay after July 7, 2020, because it would not have had to pay that rent if the purchase had gone through on that date. Therefore, the district court did not err in concluding that Bronco Elite would be entitled to receive an offset for rent paid.

**E. The district court did not err in awarding attorney fees to Bronco Elite below; however, it erred in denying Bronco Elite's request for post-judgment attorney fees.**

*1. The First Attorney Fee Award*

The district court determined that Bronco Elite was the prevailing party below and granted its request for attorney fees over Owners' objection. The district court explained:

> The [c]ourt finds sufficient evidence in the record and from the [c]ourt's personal experience to evaluate each of the Rule 54 factors. The [c]ourt has knowledge of these case proceeding[s] and the legal issues involved to adequately evaluate the objective desirability of the case. Further, the [c]ourt is aware of any time limitations involved in this case involving the purchase of a leased property through the course of the litigation. The Tenants' failure to directly address these factors in their memorandum is not fatal to a claim for fees. There is sufficient evidence for the [c]ourt to consider all of the Rule 54(e)(3) factors when reaching a decision on the reasonableness of the fees request. Therefore, the [c]ourt denies the request to disallow fees in its entirety for failing to address all of the Rule 54(e)(3) factors in the memorandum of fees.

On appeal, Owners argue the district court abused its discretion in awarding attorney fees to Bronco Elite. They contend Bronco Elite should have submitted information to the district court regarding "the time limitations imposed by the client or the circumstances of the case . . . or the undesirability of the case[,]" as required by Idaho Rules of Civil Procedure 54(e)(3)(F) and 54(e)(3)(G). Bronco Elite responds that it addressed both factors because it "made clear that 'time limitations imposed by the client' and 'the undesirability of the case' were irrelevant to the fees and costs" Bronco Elite sought to recover. Bronco Elite maintains "that the information necessary for a district court to consider the Rule 54(e)(3) factors may come from a variety of sources[,]" not just that which is supplied by a party.

We hold that the district court did not abuse its discretion in awarding attorney fees to Bronco Elite. Idaho Rule of Civil Procedure 54(e)(1) provides that, "[i]n any civil action the court may award reasonable attorney fees, including paralegal fees, to the prevailing party or parties as defined in Rule 54(d)(1)(B), when provided for by any statute or contract."

> If the court grants attorney fees to a party or parties in a civil action it must consider the following in determining the amount of such fees:
>
> (A) the time and labor required;
>
> (B) the novelty and difficulty of the questions;
>
> (C) the skill requisite to perform the legal service properly and the experience and ability of the attorney in the particular field of law;
>
> (D) the prevailing charges for like work;
>
> (E) whether the fee is fixed or contingent;
>
> (F) the time limitations imposed by the client or the circumstances of the case;
>
> (G) the amount involved and the results obtained;
>
> (H) the undesirability of the case;
>
> (I) the nature and length of the professional relationship with the client;
>
> (J) awards in similar cases;
>
> (K) the reasonable cost of automated legal research (Computer Assisted Legal Research), if the court finds it was reasonably necessary in preparing a party's case;
>
> (L) any other factor which the court deems appropriate in the particular case.

I.R.C.P. 54(e)(3). "Attorney fees are a discretionary matter for the trial court and are reviewed under an abuse of discretion standard." *Sun Valley Potato Growers, Inc. v. Texas Refinery Corp.*, 139 Idaho 761, 769, 86 P.3d 475, 483 (2004). "Before a court may determine whether claimed attorney fees are reasonable, it must have enough information to properly consider the factors of Rule 54(e)(3)." *Papin v. Papin*, 166 Idaho 9, 41, 454 P.3d 1092, 1124 (2019) (quoting *Bailey v. Bailey*, 153 Idaho 526, 530, 284 P.3d 970, 974 (2012)). "Some information may come from the court's own knowledge and experience, some may come from the record of the case, but some obviously can only be supplied by the attorney of the party who is requesting the fee award." *Id.* (quoting *Bailey*, 153 Idaho at 531, 284 P.3d at 975). "Although a trial court is not required to make 'specific findings demonstrating how it employed any of the factors in Rule 54(e)(3),' it is required to consider those factors when determining the amount of the fees to award." *Sun Valley Potato Growers, Inc.*, 139 Idaho at 769, 86 P.3d at 483 (quoting *Perkins v. U.S. Transformer West*, 132

23

Idaho 427, 430, 974 P.2d 73, 76 (1999), *overruled on other grounds by Poole v. Davis*, 153 Idaho 604, 288 P.3d 821 (2012)).

Here, there is no evidence to suggest that the district court failed to consider all the factors in Rule 54(e)(3). Bronco Elite was not required to provide *all* the information necessary for the district court to consider the factors; rather, "[s]ome information may come from the court's own knowledge and experience [and] some may come from the record of the case[.]" *Papin*, 166 Idaho at 41, 454 P.3d at 1124 (quoting *Bailey*, 153 Idaho at 531, 284 P.3d at 975). The district court explicitly found that there was sufficient evidence in the record and from its own knowledge and experience for it to consider all the factors. Contrary to Owners' argument, the district court is not required to "explain how it had independent knowledge" of any of the factors. *See Sun Valley Potato Growers, Inc.*, 139 Idaho at 769, 86 P.3d at 483. Furthermore, Owners do not explain how additional information would have helped the district court to consider factors Bronco Elite conceded were irrelevant in determining reasonable attorney fees. Accordingly, Owners have not shown that the district court abused its discretion in awarding the fees that it did to Bronco Elite.

### 2. The Second Attorney Fee Award

Owners filed their notice of appeal on August 25, 2021. On September 14, 2021, this Court ordered that the appeal be conditionally dismissed "as there [was] no final[] District Court judgment as to all claims for relief . . . as no judgment has been entered in the District Court as to the Counterclaim." This Court stated: "This appeal shall be suspended for twenty-one (21) days from the date of this Order for entry of a final[] District Court judgment as to the Counterclaim[.]" The district court entered an amended judgment on September 14, 2021, and Owners then filed an amended notice of appeal on September 28, 2021. They also asked the district court to reject any attorney fees sought by Bronco Elite incurred "during the automatic stay and the commencement of the appeal."

The district court denied Owners' request to disallow attorney fees based on the automatic stay. The district court explained that pursuant to Idaho Appellate Rule 13(a), an automatic fourteen-day stay was in effect from August 25, 2021—the date Owners filed their original notice of appeal—until September 8, 2021. The district court further determined that, "[a]s to any stay from the Amended Judgment . . . the automatic stay was not in effect until the bond was posted on September 20, 2021." Accordingly, the district court found "it appropriate to allow fees for the attempt to enforce the Judgment."

24

On appeal, Owners assert that the district court abused its discretion in granting Bronco Elite's second request for fees. They argue that, pursuant to Idaho Appellate Rules 13 and 17, the automatic fourteen-day stay was in effect from September 14, 2021, through September 28, 2021. They contend the district court should not have allowed Bronco Elite to recover attorney fees incurred during that period. Bronco Elite responds that the automatic stay was in place from August 25, 2021, to September 8, 2021. Bronco Elite points out that Owners incorrectly appealed from a non-appealable judgment when they filed their notice of appeal on August 25, 2021. Nonetheless, Bronco Elite argues, the automatic stay began on the date Owners filed their notice of appeal. As a result, Bronco Elite maintains it could receive attorney fees incurred after September 8, 2021.

We conclude that the district court did not err in awarding Bronco Elite the attorney fees it incurred after the expiration of the automatic stay. Idaho Appellate Rule 17(e)(2) states that "[a] notice of appeal filed from an appealable judgment or order before formal written entry of such document shall become valid upon the filing and the placing the stamp of the clerk of the court on such appealable judgment or order, without refiling the notice of appeal." This Court has "historically held that a notice of appeal filed prior to the entry of a written appealable judgment becomes valid once the written appealable judgment is entered." *Durst v. Idaho Comm'n for Reapportionment*, 169 Idaho 863, 868, 505 P.3d 324, 329 (2022); *see also Spokane Structures, Inc. v. Equitable Inv., LLC*, 148 Idaho 616, 621, 226 P.3d 1263, 1268 (2010).

However, Idaho Appellate Rule 13(a) provides in relevant part that, "*upon the filing* of a notice of appeal or notice of cross-appeal all proceedings and execution of all judgments or orders in a civil action in the district court, shall be automatically stayed for a period of fourteen (14) days[.]" (Italics added.) By the plain language of Rule 13(a), the automatic stay begins on the date a notice of appeal is *filed*, not the date the notice of appeal becomes valid. Because Owners filed their notice of appeal on August 25, 2021, that is the date the automatic stay began. The fourteen-day automatic stay thus ended on September 8, 2021. Accordingly, Owners have not shown that the district court abused its discretion in awarding the fees incurred by Bronco Elite after September 8, 2021, because those fees were not incurred during the automatic stay.

*3. The Denial of Post-Judgment Attorney Fees*

Bronco Elite also requested attorney fees it incurred in opposing several of Owners' post-judgment motions. Relevant here, the district court denied portions of that request, concluding

that the request was untimely pursuant to the fourteen-day deadline set out in Idaho Rule of Civil Procedure 54. The district court explained that "post-judgment fees requests awardable by statute must still be filed within fourteen days from the entry of the order giving rise to the fees request. . . . [W]ithout such limitation," the district court reasoned, "post judgment attorney fees claims made at any time before satisfaction of judgment would be unreasonable."

On appeal, Bronco Elite argues that the district court committed an error of law in applying the fourteen-day deadline in Rule 54 to its request for fees. Bronco Elite argues that Rule 54, by its plain language, applies only to the entry of a judgment—not to orders that are not judgments. Because the request for fees it made was reasonable, Bronco Elite maintains the district court erred in denying its request.

In response, Owners contend that "a plain reading of [Rule 54] would bar all post-judgment fees that are not requested within 14 days of the judgment." They contend that a fourteen-day deadline is reasonable and point out that Bronco Elite "failed to request permission for the late submission or make any showing of good cause or excusable neglect."

We hold that the district court erred in imposing the rigid fourteen-day deadline as it did. The fourteen-day deadline applies specifically to judgments: Under Rule 54, the request for attorney fees may be filed "[a]t any time after the verdict of a jury or a decision of the court, but not later than 14 days after entry of judgment[.]" I.R.C.P. 54(d)(4).

Notably, Idaho law specifically provides a mechanism for an aggrieved party to obtain post-judgment attorney fees. By way of example, Idaho Code section 12-120(5) states:

> In all instances where a party is entitled to reasonable attorney's fees and costs under subsection (1), (2), (3) or (4) of this section, such party shall also be entitled to reasonable postjudgment attorney's fees and costs incurred in attempting to collect on the judgment. Such attorney's fees and costs shall be set by the court following the filing of a memorandum of attorney's fees and costs with notice to all parties and hearing.

A strict interpretation of the fourteen-day deadline in Rule 54, as urged by Owners, would render Idaho Code section 12-120(5) a nullity. In addition, such an interpretation would require a party to submit a request for post-judgment attorney fees within fourteen days of the entry of judgment, a virtual impossibility regardless of whether the party against whom the judgment has been awarded is doing everything in its power to evade the judgment. Such a result would be contrary to the purpose behind the statute. *Sweitzer v. Dean*, 118 Idaho 568, 571–72, 798 P.2d 27, 30–31 (1990) ("When interpreting the meaning of the language contained in a statute, this Court's task is

to give effect to the legislature's intent and purpose. . . . It is incumbent upon this Court to interpret a statute in a manner that will not nullify it[.]"). We recognize that this Court generally "has the inherent power to make rules governing the procedure in all of Idaho's courts" and, as such, the Idaho Rules of Procedure generally trump conflicting statutes within that realm. *State v. Weigle*, 165 Idaho 482, 486, 447 P.3d 930, 934 (2019) (quoting *Talbot v. Ames Constr.*, 127 Idaho 648, 651, 904 P.2d 560, 563 (1995)); *see also* IDAHO CONST. art. V, § 13 ("The legislature shall have no power to deprive the judicial department of any power or jurisdiction which rightly pertains to it as a coordinate department of the government[.]"). However, embracing Owners' argument would result in Rule 54 being interpreted too narrowly. The Rule makes sense from the standpoint that attorney fees incurred in obtaining a judgment that has been entered must be pursued expeditiously. However, we will not interpret Rule 54 in a way that effectively nullifies section 12-120(5).

We hold that, in order to collect post-judgment attorney fees, a party must request such fees within a reasonable time of incurring them. Because the district court erred in concluding the fourteen-day deadline applied to Bronco Elite's request for post-judgment attorney fees, it abused its discretion in denying the request.

**F. Bronco Elite is entitled to attorney fees on appeal.**

Owners seek attorney fees and costs on appeal pursuant to the lease agreement, Idaho Code section 12-120(3), and Idaho Appellate Rules 40 and 41. Likewise, Bronco Elite asserts that it is entitled to "attorney fees and costs on appeal pursuant to the terms of the Lease (section 20.1) and pursuant to Idaho Code §§ 12-120(3), 12-120(5), and Idaho Appellate Rules 40 and 41."

Idaho Code section 12-120(3) provides:

> In any civil action to recover on an open account, account stated, note, bill, negotiable instrument, guaranty, or contract relating to the purchase or sale of goods, wares, merchandise, or services and in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs.

> The term "commercial transaction" is defined to mean all transactions except transactions for personal or household purposes. The term "party" is defined to mean any person, partnership, corporation, association, private organization, the state of Idaho or political subdivision thereof.

Both parties agree that the gravamen of this case was a commercial transaction. *See Stanger v. Walker Land & Cattle, LLC*, 169 Idaho 566, 577, 498 P.3d 1195, 1206 (2021) (concluding that an action arising out of a lease agreement was "commercial in nature"). As the prevailing party on

27

every issue on appeal, Bronco Elite is the prevailing party and, therefore, entitled to attorney fees pursuant to Idaho Code section 12-120(3). Because Bronco Elite is entitled to attorney fees on appeal under section 12-120(3), we need not address whether it is also entitled to attorney fees under the lease agreement or Idaho Code section 12-120(5).

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment as well as the district court's denial of Owners' motion to reconsider. We reverse the district court's decision regarding the purchase price of the Property. We also affirm the district court's decision allowing Bronco Elite to obtain an additional offset to the purchase price for rent it paid during the stay on appeal, and we affirm the district court's denial of Owners' request for a credit as a condition to stay enforcement of the judgment. We affirm the district court's decisions to award Bronco Elite attorney fees below; however, we reverse the district court's decision to reject Bronco Elite's request for post-judgment attorney fees. Further, we award Bronco Elite attorney fees and costs on appeal. The case is remanded for further proceedings consistent with this opinion.

Chief Justice BEVAN, and Justices BRODY, MOELLER and ZAHN CONCUR.